UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 15-60370-CIV-BLOOM/VALLE

**MBACHAN C. OKWEN**,

    Plaintiff,

v.

**AMERICAN MARITIME OFFICERS PLANS**,
**STEVEN NICKERSON**, **STACEY SUNDAL**,
**DISTRICT 2A TRANSPORTATION TECHNICAL**
**WAREHOUSE INDUSTRIAL AND SERVICE**
**EMPLOYEE UNION**, and **THOMAS BETHEL**

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants' Motions to Dismiss, ECF Nos. [16], [19], filed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Both motions pertain to Plaintiff's Complaint, ECF No. [1], filed on October 9, 2014. The Court is fully advised after careful review of the motions, the parties' briefs, the record, and the applicable law.

### I.  Background

Plaintiff initiated the instant action on October 9, 2014, in the United States District Court for the Eastern District of Pennsylvania, "to seek redress from his former employer, American Maritime Officers Plans ["AMOP"], its representatives, and his former union, District 2A Transportation Technical Warehouse Industrial and Service Employee Union ["District 2A"], and its representatives, alleging unlawful discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*" ECF No. [1] at 1. After all Defendants executed waivers of service, the parties entered a stipulation to transfer venue to the Southern District of Florida and for an enlargement of time to file responses to the complaint on

January 26, 2015, ECF No. [8], which was granted on February 19, 2015. *See* ECF No. [9]. Defendants District 2A and Thomas Bethel filed their Motion to Dismiss (the "Union Motion"), ECF No. [16], and the remaining defendants filed their Motion to Dismiss (the "Employer Motion"), ECF No. [19], on March 12, 2015.

Plaintiff was an employee of Defendant AMOP starting in January 2007, working as an accountant. *See* ECF No. [1] at 2. Defendants Steven Nickerson and Stacey Sundal were also employees of Defendant AMOP during Plaintiff's employment. Plaintiff alleges that during his employment, he was "subjected to harassment and verbal assaults by his supervisors who made insulting comments regarding men of African descent and Plaintiff's accent." *Id.* at 3.

Plaintiff also alleges that he was not allowed to submit an application for the position of Accounting Manager in 2009. *See id.* Plaintiff alleges that he "expressed interest in this position to Defendant AMOP and its representatives," and "[a]lthough Plaintiff was highly-qualified for this position, he was told that he would not be considered." *Id.* Plaintiff alleges that, instead, Defendants "invited an external applicant to apply for the position . . . and subsequently hired her. Upon information and belief, Defendant AMOP and its representatives hired a Caucasian woman of Jewish descent." *Id.*

Plaintiff filed his first charge of discrimination with the Equal Employment Opportunity Commission on June 18, 2009. *See* ECF No. [35-2].[1] In his first charge, Plaintiff asserted that he had "been subjected to different terms and conditions of employment because of [his] national origin." *Id.* Plaintiff explained that Defendant Sundal "scolded [him] and made fun of his accent by saying 'blah, blah, blah . . . I can't understand what you are saying." *Id*. Plaintiff also

---

[1] A district court may consider a document attached to an answer, when deciding a motion to dismiss, without converting the motion into one for summary judgment only if the attached document is: (1) central to one of the claims, and (2) undisputed, meaning that the authenticity of the document is not challenged. *See Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002). Here, the Court finds that Plaintiff's EEOC charges of discrimination are central to Plaintiff's claim, and the authenticity of the document is undisputed.

explained that he was "the most qualified individual Accounting Manager position and I was denied the opportunity to apply for it," and instead, Amber Mizrachi (American) was hired. *Id.*

In his Complaint, Plaintiff alleges that after he filed his first charge, "Defendant AMOP and its representatives began taking adverse employment action against Plaintiff in retaliation for filing the charge of discrimination," and "Defendant Sundal disclosed to Plaintiff's co-workers that he filed a charge of discrimination against Defendant AMOP and encouraged an environment of harassment and isolation." *Id.* Plaintiff alleges that once Ms. Mizrachi was hired, Defendant Sundal instructed her "to monitor Plaintiff's activities and log any instance of potential misconduct," and that she "was not instructed to treat any other employee in this fashion." *Id.*

Plaintiff alleges that he was "subjected to harassment by co-workers and supervisors, specifically Fahmida Rehman . . . the self-described relative of Defendant Sundal." *Id.* Plaintiff alleges that he filed an internal complaint with Defendant AMOP's human resources department about Ms. Rehman's treatment of him and another internal complaint about "the excessive and intrusive monitoring"—and that "Defendant AMOP and its representatives took no action with regard to Plaintiff's complaint[s]." *Id.* at 3-4. Plaintiff also makes allegations about being excluded from access to Defendant AMOP's network on several occasions, "which made it extremely difficult for him to perform the duties of his position." *Id.* at 4. He further alleges that he was denied access to meetings, was denied access to training, and he describes other "discriminatory supervisory tactics" used against him. *Id.*

Plaintiff alleges that "[o]n or about February 10, 2010, in accordance with Defendant AMOP's Whistleblower policies, Plaintiff filed a complaint alleging Defendant Sundal was engaged in unlawful financial practices." *Id.* at 5. He alleges that he was suspended during the

pendency of the investigation, that Defendant Sundal was not, and "[o]n or about March 5, 2010, Defendant AMOP and its representatives terminated Plaintiff's employment based on the pretextual reason that he did not provide Defendant AMOP with his source of information with regard to Defendant Sundal's alleged unlawful financial practices." *Id.* Plaintiff alleges that "[o]n or about March of 2010, Plaintiff amended his charge of discrimination with the EEOC to include retaliation." *Id.*

Plaintiff filed his second charge of discrimination with the EEOC on May 3, 2010. *See* ECF No. [35-3]. In his second charge, Plaintiff detailed "continuing discrimination with regard to supervision," alleged that Defendant AMOP "refused to pay wages owed to me," and complained that the reason for his termination "was not made in good faith." *Id.* Plaintiff stated that he "believe[d] that [he] was retaliated against . . . for having filed a discrimination charge." *Id.* Plaintiff's Complaint further alleges that "[u]pon information and belief, Defendant Union and its representatives fostered the discriminatory and retaliatory environment suffered by Plaintiff by failing to take action on Plaintiff's behalf against his former employer, Defendant AMOP and its representatives." The Complaint states one count, titled "Violations of Title VII." ECF No. [1] at 5.

The EEOC sent Plaintiff a Notice of Right to Sue letter on July 8, 2014. *See id.* at 2; ECF No. [35-1]. The U.S. Postal Service attempted to deliver the letter on July 11, 2014, and a notice was left because Plaintiff was unavailable. *See id.* The letter was successfully delivered on July 14, 2014. *See id.*

## II.     Legal Standard

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does

not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2)'s pleading standards "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiffs' allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiffs. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002). While the Court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) ("When considering a motion to dismiss…the court limits its consideration to the pleadings and all exhibits attached thereto.") (internal quotation marks omitted).

**III.    Discussion**

Because the Union Motion and the Employer Motion argue for dismissal of Plaintiff's Complaint on different grounds, the Court will address the merits of each motion separately.

      a.   The Union Motion

In support of dismissal, the Union Motion advances that Plaintiff cannot state a claim because he has failed to exhaust administrative remedies, and alternatively, any claim of breach of the duty of fair representation is now barred by the applicable statute of limitations. *See* ECF No. [16] at 3. Because Plaintiff's Complaint does not allege any breach of the duty of fair representation, the Court declines to address the statute of limitations issue.

"Section 706 of Title VII . . . requires that a plaintiff . . . exhaust certain administrative remedies before filing a suit for employment discrimination." *Equal Empl. Opportunity Comm'n v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002) (citing 42 U.S.C. § 2000e-5). "The administrative process is initiated by timely filing a charge of discrimination." *Id.* "For a charge to be timely in a deferral state such as Florida, it must be filed within 300 days of the last discriminatory act." *Id.* Rather than constituting a jurisdictional perquisite, this exhaustion requirement is a condition precedent. *See Goodridge v. Astrue*, Civil Action No. 1:07-CV-1919-RLV-RGV, 2008 WL 8691093, at *2 (N.D. Ga. Mar. 20, 2008) (citing *Fouche v. Jekyll Island-State Park Auth.*, 713, F.2d 1518, 1525 (11th Cir. 1983)). Accordingly, the defendant must, with specificity and particularity, deny plaintiff's completion of the exhaustion requirement. *See Steinberg v. Donahoe*, No. 13-61617-CIV, 2014 WL 1356711, at *6 (S.D. Fla. Apr. 7, 2014) (citing *Goodridge*, 2008 WL 8691093 at *2). "If it does so, the plaintiff then must prove that the condition precedent called to the question by the defendant has, in fact, been satisfied." *Id.*

Defendants raise three arguments in support of its contention that Plaintiff has failed to show exhaustion. First, Defendants explain that "Plaintiff's EEOC charge fails to include any mention of District 2A or Bethel or discriminatory acts by any District 2A representatives." ECF No. [16] at 6. Second, Defendants argue that "[s]ince Plaintiff's allegations of discrimination in

6

violation of Title VII in this civil action as to District 2A and Bethel are entirely new, they are inappropriate in this case." *Id.* (citing *Gregory v. Ga. Dep't of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004)). And finally, Defendants argue that Plaintiff's filing of a charge with the National Labor Relations Board in 2010 "is not a substitute" for failing to name them in the EEOC charge. *Id.*

In response, Plaintiff argues that for purposes of determining whether exhaustion has occurred, "the scope of the judicial complaint is limited to the scope of the EEOC investigation, which can reasonably be expected to grow out of the charge of discrimination." ECF No. [34] at 3 (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970)). Plaintiff urges that the alleged discrimination of Defendants is "sufficiently like or related to the initial charge and an investigation can reasonably be expected to grow from it," *id.* (citing *Gamble v. Birmingham S. R.R. Co.*, 514 F.2d 678 (5th Cir. 1975)). In support, Plaintiff asserts that because Defendants failed to attend a meeting with his employer to discuss whether his complaints were made in good faith, "Plaintiff concluded Defendants conspired with his employer to retaliate against him, based upon his numerous complaints." *Id.* Plaintiff also explains that two months after that meeting, Plaintiff filed a complaint with the NLRB, and "[a]ll of the aforementioned documents were requested and forwarded to the EEOC as part of the investigation." ECF No. [34] at 4.

Indeed, "[i]n light of the purpose of the EEOC exhaustion requirement . . . a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory*, 355 F.3d at 1280 (citations and internal quotation marks omitted). An examination of the charges of discrimination filed by Plaintiff reveals that the actions of Defendants District 2A and Thomas Bethel could not have been reasonably expected to grow out of Plaintiff's charges filed with the EEOC.

The first charge, filed on June 18, 2009, contains allegations regarding "different terms and conditions of employment" due to "national origin" at the hands of Stacey Sundal and Vanessa Torres—both employees of Defendant American Maritime Officers Plans. ECF No. [19-1] at 2. The first charge also alleges that he was "the most qualified individual for the Accounting Manager position" and "was denied the opportunity to apply for it." *Id.* Nothing in this charge relates to the assertion that Defendants District 2A and Thomas Bethel "conspired with his employer to retaliate against him, based upon his numerous complaints." ECF No. [34] at 3.

The second charge, filed on May 3, 2010, indeed mentions the meeting which triggered Plaintiff's belief of the existence of such a conspiracy. *See* ECF No. [19-2] at 2 ("The reasons for my discharge was that I refused to answer questions during a meeting on 2/22/2010 and that my complaint against Stacey Sundal was not made in good faith."). However, the second charge makes no mention whatsoever that Plaintiff requested union representation, nor that a union representative failed to appear on his behalf. Further, Plaintiff's Complaint does not even mention the NLRB complaint. These omissions—combined with the fact that the EEOC charges completely fail to name Defendants District 2A and Thomas Bethel—persuade the Court that an investigation into the existence of a discriminatory conspiracy between Plaintiff's employer and the union would not have reasonably grown out of these charges.

If Plaintiff wanted the EEOC to investigate his belief that Defendants District 2A and Thomas Bethel were conspiring with his employer to discriminate against him, he should have so stated to the EEOC. Plaintiff's assertion, without citation to any authority, that the provision to the EEOC of all of the documents relating to his NLRB complaint against Defendants District 2A and Thomas Bethel were sufficient to reasonably incorporate them into the EEOC's

8

investigation is not persuasive. The Complaint, for example, does not indicate the allegations contained in the NLRB complaint, nor that the EEOC actually received and reviewed them. Accordingly, the Court finds that Plaintiff has failed to comply with the statutory condition precedent of exhaustion, and his Title VII claims against Defendants District 2A and Thomas Bethel are dismissed.

      b.   The Employer Motion

Defendants of the Employer Motion raise six grounds for dismissal of Plaintiff's Complaint: (1) Plaintiff failed to timely file his Title VII action against them; (2) Defendants Nickerson and Sundal cannot be held personally liable under Title VII; (3) Plaintiff's Complaint must be dismissed because it fails to separate his causes of action in separate counts; (4) he fails to state a claim of national origin discrimination, as alleged; (5) his asserted claims for harassment fall outside the scope of his charge of discrimination; and (6) he failed to exhaust his asserted claims for retaliation.

      i.   *Whether Plaintiff timely filed his Title VII action*

Defendants asserts that Plaintiff's complaint should be dismissed because he filed the instant action on October 9, 2014—ninety-four days after the date of the EEOC's Right to Sue letter, which was dated July 7, 2014. *See* ECF No. [19] at 7. As grounds, Defendants assert that Plaintiff filed it "one day late" because "[a]pplying the three day presumption established under [Fed. R. Civ. P.] 6(d), Plaintiff had through and until Wednesday, October 8, 2014." *Id.* In response, Plaintiff provides an exhibit showing that the first attempt to deliver the EEOC letter was on July 11, 2014, which resulted in "Notice Left (No Authorized Recipient Available)," and that the letter was successfully delivered on July 14, 2014. ECF No. [35-1] at 1. Because the

letter was delivered on July 14, 2014, Plaintiff argues his filing is within the ninety-day limit, and is, therefore, timely.

The Court agrees with Plaintiff, as Defendant misstates the three-day presumption—as discussed in *Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337 (11th Cir. 1999). In *Zillyette*, the plaintiff filed a charge of discrimination with the EEOC on May 10, 1996, and the EEOC sent a certified letter to him informing him of his right to sue within 90 days on September 4, 1996. The U.S. Postal Service first attempted to deliver the letter the next day, but was unable to because the plaintiff was not at home, and left a notice that the letter would be redelivered or could be picked up at the post office. Another failed attempt was made on September 10th, and the plaintiff was informed that he had until September 20th to pick up the letter or it would be returned to the sender. The plaintiff picked up the letter before it was returned. Ultimately holding that the plaintiff had not timely filed because he did so 98 days after the first notice on September 5th, the Eleventh Circuit explained that "a plaintiff is entitled to a reasonable time to pick up the letter upon a receipt of a notice of delivery." *Id.* at 1342. The Court held that "a three-day period, analogous to the federal rule governing time for taking action after service by mail, *see* Fed. R. Civ. P. 6(e), provides an appropriate period for a plaintiff to act to receive an unsuccessfully delivered letter." *Id.*

Here, the U.S. Postal Service provided Plaintiff with a notice on July 11, 2014 (a Friday), and the letter was delivered three days later, on July 14, 2014 (a Monday). Because the delivery took place within three days of the notice,[2] the Court finds that the delivery took place within the reasonable time Plaintiff was allotted to obtain the letter, and that the ninety-day clock began to run on July 14, 2014. Because Plaintiff filed the instant suit on October 9, 2014, his suit is

---

[2] The Court does not reach the issue of whether the three-day period under *Zillyette* consists of calendar days or business days because under the facts presented here, it is not necessary.

timely-filed. *See also Brehm v. Seminole Towne Ctr. Ltd. P'ship*, No. 6:11-cv-965-28GJK, 2012 WL 405415, at *5 (M.D. Fla. Jan. 12, 2012) (using date of delivery of letter, not date of notice where record was unclear whether sender was identified, in determining suit was timely filed).

In reply, Defendants assert that even if Plaintiff timely filed in the Eastern District of Pennsylvania, that filing was made in an improper venue, and thus, dismissal is warranted because "the federal venue transfer provisions were not 'enacted to allow a plaintiff to file a Complaint in any judicial district within the United States merely to stop the running of the statute of limitations where the plaintiff knows that the judicial district . . . has no reasonable relationship to the underlying litigation.'" ECF No. [37] at 5 (quoting *Blackburn v. Eli Lilly & Co.*, No. 99 Civ. 0722, 1999 U.S. Dist. LEXIS 18747 (N.D.N.Y. Nov. 20, 1999)). The Court notes, however, that Defendants did not raise this argument until its reply, a point which Defendants concede. *See* ECF No. [37] at 4 n.1. Though Defendants have indicated they are amenable to Plaintiff filing a sur-reply to respond to this argument, the Court declines this invitation to so order, as the Court is unpersuaded by Defendants' assertion that "Defendants did not learn of Plaintiff's alleged 'timely' filing until Plaintiff filed its Opposition and could not have raised the issue at that time." *Id.* At the time Defendants filed their motion, in which they challenge the timeliness of the filing of Plaintiff's suit, such an issue was hardly unforeseeable. Thus, the Court does not consider this argument, *see, e.g.*, *Flamenbaum v. Orient Lines, Inc.*, No. 03-22549-CIV, 2004 WL 1773207, at *14 (S.D. Fla. Jul. 20, 2004) (declining to consider argument raised first time in reply because opposing party had no opportunity to respond), and finds that Defendants' motion as to the timeliness of Plaintiff's lawsuit is due to be denied.

> ii. *Whether Defendants Nickerson and Sundal can be held personally liable under Title VII*

Defendants argue that Defendants Nickerson and Sundal cannot be held personally liable under Title VII, *see* ECF No. [19] at 12, an argument to which Plaintiff does not respond. The Court agrees with Defendants, as "the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991). Because Plaintiff has named his former employer as a Defendant, the Court finds that Defendants Nickerson and Sundal are due to be dismissed with prejudice.

> iii. *Plaintiff's remaining claims*

Title VII makes it unlawful for an employer to discriminate against an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To state a discrimination claim under title VII, a complaint must "provide enough factual matter (taken as true) to suggest intentional . . . discrimination." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). *See also Castillo v. Allegro Resort Mktg.*, __ F. App'x __, __, 2015 WL 1214057, at *3 (11th Cir. 2015) (applying standard to national origin discrimination claim); *Davis*, 516 F.3d at 974 ("[A] Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case") (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)). "This is because *McDonnell Douglas*'s burden-shifting framework is an evidentiary standard, not a pleading requirement." *Surtain v. Hamlin Terrance Found.*, __ F.3d __, __, 2015 WL 3715901, at *4 (11th Cir. 2015).

"Discriminatory conduct that is 'so severe or pervasive that it create[s] a work environment abusive to employees because of their race, gender, religion, or national origin

offends Title VII's broad rule of workplace equality.'" *Uppal v. Hosp. Corp. of Am.*, 482 F. App'x 394, 396 (11th Cir. 2012) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)). To establish a hostile work environment claim, a plaintiff must show:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under a theory of vicarious or direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

Finally, "Title VII makes it unlawful 'for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice' under Title VII." *Uppal*, 482 F. App'x at 397 (quoting 42 U.S.C. § 2000e-3(a)). "Retaliation under Title VII occurs when an employee engages in protected activity, and suffers an adverse employment action that is causally related to that activity." *Id.* (citing *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998)). "In terms of causation, a plaintiff must show that the decision-maker was aware of the protected conduct." *Id.* (citing *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)).

In support of dismissal, Defendants argue that discrimination, retaliation, and hostile work environment under Title VII are separate theories of relief, and as such, "each of these theories of relief brought under Title VII must be stated in a separate count in accordance with Fed. R. Civ. P. 10(b)." ECF No. [19] at 7. Defendants argue that "[l]umping Defendants together in a single count complaint does not afford fair notice of the basis for the claims asserted against them, especially considering that as to some of these Defendants, no roles of their actions or inactions are even generally described." *Id.* at 8 (citing *Pierson v. Orlando Reg'l*

*Healthcare Sys., Inc.*, 619 F. Supp. 3d 1260, 1273 (M.D. Fla. 2009), *aff'd* 451 F. App'x 862 (11th Cir. 2012)). In response, Plaintiff asserts that "[u]ndersigned counsel was recently retained in this matter and did not prepare the Complaint that is the subject of Defendants' Motion to Dismiss. Any alleged failure of Plaintiff's Complaint to separate causes of action is curable." ECF No. [35] at 5-6.

The Court agrees with Defendants. Stating claims of Title VII discrimination, retaliation, and hostile work environment claims each require distinct, separate elements. Thus, in order to state claims of these distinct, separate issues, Plaintiff must plead each count separately. *See* Fed. R. Civ. P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense."). *See also Marshall v. Aryan Unlimited Staffing Solution*, No. 12-81404-CIV, 2013 WL 4759050, at *3 (S.D. Fla. Sept. 3, 2013); *Rosson v. Fla. Health Sciences Ctr.*, No. 8:99-2468CIV-T-17(F), 2000 WL 782951, at *5 (M.D. Fla. Apr. 18, 2000). Plaintiff's Complaint is accordingly dismissed on this basis, with leave to amend. Because the Court determines that dismissal of the entire Complaint is merited, the Court need not address the remaining issues raised by Defendants at this time.

**IV. Conclusion**

For these reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants District 2A and Thomas Bethel's Motion to Dismiss, **ECF No. [16]**, is **GRANTED**. Defendants District 2A Transportation Technical Warehouse Industrial and Service Employee Union and Thomas Bethel are **DISMISSED WITH PREJUDICE**.

2. Defendants American Maritime Officers Plans, Steven Nickerson, and Stacey

Sundal's Motion to Dismiss, **ECF No. [19]**, is **GRANTED**. Defendants Steven Nickerson and Stacey Sundal are **DISMISSED WITH PREJUDICE**.

3. The remainder of Plaintiff's Complaint, **ECF No. [1]**, is **DISMISSED WITHOUT PREJUDICE**.

4. Plaintiff shall file an amended complaint **on or before July 6, 2015**. The failure to do so or show cause will result in dismissal of this case without further notice.

5. The parties shall continue to abide by the Court's Scheduling Order, ECF No. [44].

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 24th day of June, 2015.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record